Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| WILBERTO LÓPEZ VERA<br>**Apelado**<br><br>V.<br><br>*AGUADA ESMERALD FIELDS CANNABIS WELLNESS CENTER* Y OTROS<br>**Apelante** | KLAN202401135 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil. Núm. AU2020CV00130<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente.**

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de febrero de 2025.

El 18 de diciembre de 2024, Wilberto López Vera (señor López o apelante) compareció ante nos mediante un recurso de *Apelación* y solicitó la revisión de una *Sentencia Sumaria Parcial* que se emitió el 15 de noviembre de 2024 y se notificó el 18 de noviembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por el Fideicomiso González Román (Fideicomiso o apelado). En consecuencia, desestimó la *Segunda Demanda Enmendada* en contra del Fideicomiso.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen apelado.

I.

El 13 de marzo de 2020, el señor López presentó una *Demanda* sobre daños y perjuicios en contra de Aguada Emerald Fields Cannabis Wellness Center, LLC (Aguada Emerald) y las

aseguradoras de esta.[1] Alegó que, el 15 de marzo de 2019, sufrió daños a consecuencia de una caída, mientras caminaba por la rampa del negocio de Aguada Emerald. Sostuvo que se resbaló cuando salía de dicho negocio e intentó sujetarse del pasamano, toda vez que la rampa estaba mojada a causa de la lluvia. Además, señaló que la rampa no tenía instaladas las tiras de anti resbaladizas ni ninguna otra medida para evitar que las personas resbalaran, lo cual constituyó una condición peligrosa que era conocida por Agua Emerald. Esbozó que, dicha rampa no cumplía con los reglamentos ni códigos aplicables vigentes en Puerto Rico.[2] Por ello, razonó que el accidente fue causado por negligencia de Aguada Emerald, puesto que mantuvo una condición peligrosa en la rampa. De igual forma, señaló que el lugar estaba desprovisto de letreros que advirtieran a los clientes sobre la condición peligrosa. Por todo lo anterior, solicitó una suma no menor de $75,000.00 por daños físicos y angustias mentales y, $500.00 por gastos médicos.

En respuesta, el 3 de septiembre de 2020, el Aguada Emerald presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[3] Asimismo, manifestó que la rampa de acceso al local tenía cintas anti resbaladizas y un pasamano, en la fecha en que presuntamente ocurrió el incidente. A su vez, indicó que la losa de la rampa era para exteriores y que el señor López nunca les informó sobre el accidente.

Así las cosas, el 30 de julio de 2021, el apelante presentó una *Demanda Enmendada* a los fines de incluir como demandados al Fideicomiso y al Sr. Roberto H. González (señor González), su esposa y la sociedad legal de gananciales compuesta por ambos.[4] Allí,

---

[1] Véase, págs. 1-9 del apéndice del recurso.
[2] Aclaramos que, este no hizo alusión a incumplimientos específicos con la *American wtih Disabilities Act,* 42 USC sec. 12181 *et seq.* (Ley ADA) y el *International Building Code 2000*, 36 CFR 1191.
[3] Id., págs. 10-14.
[4] Id., págs. 15-20.

argumentó que el accidente fue causado por la negligencia de todos los demandados por no mantener de manera segura y en buen estado de reparación la rampa del negocio, y permitir la existencia de una condición peligrosa.

Posteriormente, el 12 de marzo de 2022, Aguada Emerald presentó su *Contestación a Demanda Enmendada* en la cual reiteró sus argumentos de la *Contestación a Demanda*.[5] Añadió, que el lugar donde presuntamente ocurrió el accidente era un local comercial arrendado que no estaba bajo su control ni mantenimiento y, que dicha rampa era segura. En la misma fecha, Aguada Emerald presentó una *Demanda Contra Coparte* contra el Fideicomiso y el señor González. En lo pertinente, indicó que estos eran los dueños de la propiedad arrendada y encargados de proveer mantenimiento a la rampa. El 19 de mayo de 2022, el apelante presentó su *Segunda Demanda Enmendada* con el único fin de incluir a Universal Insurance Company, aseguradora del Fideicimiso como parte codemandada.[6]

Por su parte, el 20 de mayo de 2022, el Fideicomiso presentó su *Contestación a Primera Demanda Enmendada*.[7] A su vez, el 25 de mayo de 2022, el Fideicomiso presentó su *Contestación a Demanda Contra Co-parte y Reconvención Contra Co-Parte*.[8] Mediante ambos escritos, reafirmó sus defensas afirmativas. Aclaró que, conforme al contrato de arrendamiento que otorgó con Aguada Emerald, este aceptó dicha propiedad como estaba y, se obligó a tomar las medidas necesarias para operar y mantener el negocio. De igual forma, señaló que la rampa cumplía con las especificaciones de la industria. En virtud de lo anterior, razonó que los daños reclamados debían ser resarcidos por Aguada Emerald, pues tenía el local a su cargo.

---

[5] Id., págs. 21-25.
[6] Id., págs. 28-33.
[7] Id., págs. 34-47.
[8] Id., págs. 48-59.

En la misma fecha, el 25 de mayo de 2022, Aguada Emerald presentó su *Contestación a Reconvención Contra Co-Parte.*[9] En esta, reiteró que el Fideicomiso era el responsable del mantenimiento del edificio y sus exteriores. Luego, el 4 de octubre de 2022, el Fideicomiso presentó su *Contestación Enmendada a Segunda Demanda Enmendada y Demanda Contra Co-Parte* reiterando sus argumentos previos.[10]

Tras varios trámites procesales, el 12 de octubre de 2023, el Fideicomiso presentó una *Solicitud de Sentencia Sumaria.*[11] En primer lugar, enumeró siete (7) hechos que, a su juicio, no estaban en controversia. Asimismo, argumentó que Aguada Emerald era responsable del accidente debido a que tenía el control de la propiedad y se había obligado a darle el mantenimiento necesario para operar un negocio. En la alternativa, esgrimió que Aguada Emerald tenía la obligación de notificarle la necesidad de realizar arreglos. Por ello, solicitó se declarase Ha Lugar la *Solicitud de Sentencia Sumaria* y, en consecuencia, desestimara *la Segunda Demanda Enmendada* y la *Demanda Contra Co-Parte.*

En desacuerdo, el 3 de noviembre de 2023, Aguada Emerald presentó su *Moción de Oposición a Sentencia Sumaria del Fideicomiso González Román.*[12] En esencia, señaló los hechos que consideraba que estaban en controversia y los que no. Además, alegó que había realizado unas obras en el interior de la propiedad y no en su exterior. Igualmente, sostuvo que la estructura y la losa no cumplían con los criterios del código de construcción.[13]

Luego de examinar los escritos presentados por las partes, el 4 de diciembre de 2023, el TPI emitió una *Sentencia Parcial* que se notificó al día siguiente, mediante la cual declaró Ha Lugar la

---

[9] Id., págs. 58-59.
[10] Id., págs. 60-76.
[11] Id., págs. 77-112.
[12] Id., págs. 113-133.
[13] Aguada Emerald no menciona cuál era el código de construcción aplicable.

*Solicitud de Sentencia Sumaria* presentada por el Fideicomiso.[14] Sin embargo, únicamente desestimó la *Demanda Contra Co-Parte* y no así la *Segunda Demanda Enmendada* presentada por Aguda Emerald. Particularmente, concluyó lo siguiente:

> Desde el momento en que Aguada Emerald arrendó la propiedad para establecer su negocio, quedó obligada por las disposiciones contractuales contenidas en el contrato de arrendamiento. Es decir, esta asumió, en virtud del contrato de arrendamiento, la obligación de llevar a cabo todas las medidas que garantizaran la seguridad de sus clientes. Dicha obligación incluía asegurarse que la rampa de acceso al local cumpliera con todos los requisitos de ley -estatales y federale de manera que dicha rampa fuera segura para el uso de sus clientes, lo que continua en controversia entre demandante y Aguada Emerald.

> A la fecha en que ocurrió el alegado accidente, el contrato de arrendamiento estaba vigente y Aguada Emerald tenía el control de la propiedad.

> De otra parte, no surge del expediente que Aguada Emerald hubiese notificado al Fideicomiso González Román ni al Dr. González Sánchez, sobre la necesidad, si alguna, de realizar cualquier tipo de reparación en la rampa que fuese requerida por ley o reglamento alguno para garantizar la seguridad de sus clientes. Tampoco surge del expediente que Aguada Emerald haya notificado al dueño de la propiedad arrendada del accidente que generó la reclamación de autos.

Ante este escenario, el 20 de diciembre de 2023, el apelante presentó una *Moción Solicitando Aclaración de Sentencia Parcial*.[15] Explicó que, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria Parcial* presentada por el Fideicomiso. Sin embargo, apuntó que no dictó sentencia desestimando la reclamación en contra del Fideicomiso. Por ello, entendió que la reclamación en contra de este continuaba vigente, toda vez que Aguada Emerald y el Fideicomiso tenían una relación contractual que no obligaba al señor López. Atendida la moción, el 20 de diciembre de 2023, el TPI emitió una *Resolución* que se notificó al día siguiente.[16] Allí, determinó lo siguiente:

---

[14] Id., págs. 134-140.
[15] Id., págs. 141-143.
[16] Id., págs. 144

El Tribunal dictó Sentencia Parcial sobre reclamación de Aguada Emerald contra Fideicomiso y al presente evalúa la causa de acción de demandante contra Fideicomiso.

Así las cosas, el 26 de diciembre de 2023, el Fideicomiso presentó su segunda *Solicitud de Sentencia Sumaria sobre Segunda Demanda Enmendada.*[17] En dicha moción, enumeró tres (3) hechos que, a su juicio, no estaban en controversia. Además, esbozó que el TPI dictó *Sentencia Parcial* el 4 de diciembre de 2023, mediante la cual desestimó la *Demanda Contra Coparte* contra el Fideicomiso. En esencia, reafirmó que en la *Sentencia Parcial* determinó que no ostentaban el control y mantenimiento del local, debido al contrato de arredramiento otorgado con Aguada Emerald. Por lo tanto, planteó que procedía que se dictara sentencia sumaria desestimando la *Segunda Demanda Enmendada.*

En desacuerdo, el 3 de enero de 2024, el señor López presentó su *Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román* en la cual señaló los hechos que, a su juicio estaban en controversia. Específicamente, adujo que existía controversia de hechos con relación a quién era el responsable de que la rampa de acceso se encontrara en condiciones seguras y, si el dueño de la propiedad era el responsable ante los daños que sufrió un tercero, en este caso el apelante. Ello, toda vez que el Fideicomiso tenía conocimiento de que dicha rampa no cumplía con la *American wtih Disabilities Act*, 42 USC sec. 12181 *et seq.* (Ley ADA) y el *International Building Code 2000*, 36 CFR 1191. Igualmente, puntualizó que en el momento que el Fideicomiso otorgó el contrato de arrendamiento, este tenía conocimiento de los incumplimientos con dichas regulaciones. Sin embargo, esgrimió que el Fideicomiso desconocía quien instaló la losa y quien realizó modificaciones a la rampa. Tampoco contrató un profesional para evaluar la propiedad.

---

[17] Id., págs. 145-150.

De otra parte, adujo que la rampa incumplía con la sección 405.2 del reglamento de diseño de accesibilidad de la Ley ADA y con la sección 1003.3.4 del Building Code de 2000, debido a que, según las medidas obtenidas por el Arquitecto Eugenio Latour, la rampa era más empinada que lo permitido y, ello causó que la misma fuera resbaladiza y ocasionara el accidente del apelante. De igual, forma, esbozó que había una violación a las secciones 505.6, 505.7, 505.8, 505.10.2 y 505.10.3 del reglamento ADA 2010, con relación a los pasamanos y sus terminaciones.

Cónsono con lo anterior, el apelante, razonó que el Fideicomiso conocía o debió conocer que la propiedad no era segura para recibir al público, por lo que no actuó como un buen padre de familia. Manifestó que, no tener el control y mantenimiento de dicha propiedad, no lo eximía de mantener la propiedad segura para la visita de terceros. Entiéndase, el contrato de arrendamiento no eximía al Fideicomiso de responsabilidad respecto a un tercero. Puntualizó, que dicho contrato de arrendamiento no le impuso a Aguada Emerald la responsabilidad de llevar a cabo reparaciones ni construcciones para que la propiedad cumpliera con los códigos y reglamentos. Por otra parte, expuso que el Art. 1444 del Código Civil de 1930, 31 LPRA sec. 4051, le imponía al arrendador la obligación de hacer en la propiedad, durante el arrendamiento, todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso al que había sido destinada, por lo que el Fideicomiso respondía al apelante. Por último, señaló que lo único que surgía del contrato de arrendamiento era que Aguada Emerald aceptaba la propiedad "como estaba" y, no le imponía la responsabilidad de cumplir con las regulaciones de la Ley ADA y el International

Building Code. Por todo lo anterior, solicitó se declara no Ha Lugar la solicitud de sentencia sumaria.[18]

Así las cosas, el 16 de enero de 2024, el Aguada Emerald presentó un recurso de *Apelación* ante este foro, al cual se le asignó el alfanumérico KLAN202400060.[19] Ante la presentación de este recurso, el 18 de agosto de 2024, se paralizaron los procedimientos en el TPI hasta que este foro resolviera la controversia planteada. En este, solicitó se revocase la *Sentencia Parcial* emitida el 4 de diciembre de 2023, notificada al día siguiente, en la cual el foro primario declaró Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por el Fideicomiso y, desestimó la *Demanda Contra Co-Parte* presentada por Aguda Emerald. En específico, formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia, Sala de Aguadilla al desestimar la demanda contra coparte que Aguada Emerald radicó contra el Fideicomiso González Román por vía sumaria habiendo controversias de hecho en torno a la responsabilidad por negligencia del fideicomiso.

> Erró el Tribunal de primera instancia, sala de aguadilla, al desestimar la demanda contra el fideicomiso González cuando ésta es la persona natural con título y dominio de la propiedad arrendada y cuyo fideicomisario utilizaba libremente los haberes del fideicomiso.

No obstante, el 15 de agosto de 2024, este Tribunal de Apelaciones emitió una *Sentencia* en el KLAN202400060 y, determinó lo siguiente:

> Así las cosas, consideramos que el foro primario tampoco erró al aplicar el derecho a los hechos incontrovertidos. Es decir, que, al igual que el foro primario, estamos convencidos de que, en virtud del Contrato de Arrendamiento, la apelante se obligó a realizar las medidas de seguridad en la propiedad arrendada, y el mantenimiento de las mismas, para el beneficio de sus clientes. Además, la apelante no demostró que le haya dado aviso al Fideicomiso sobre

---

[18] Id., págs. 223-240. El 8 de enero de 2024, el Fideicomiso presentó su *Réplica a Moción de Sentencia Sumaria del Fideicomiso González Román* en la cual reiteró los planteamientos de su *Solicitud de Sentencia Sumaria sobre Segunda Demanda Enmendada.*[18] Adicionalmente, el 20 de agosto de 2024, presentó una *Moción Informativa y Reiterando Solicitud de Sentencia Sumaria.*
[19] Id., págs. 241-256.

la necesidad de realizar reparación alguna conforme a las exigencias del Código Civil de Puerto Rico.

En síntesis, en el caso de epígrafe no existen controversias sustanciales de hechos que impidan concluir sumariamente que el Fideicomiso no tenía la responsabilidad de mantener en condiciones seguras la rampa donde ocurrió el alegado accidente, sino que era la responsabilidad de Aguada Emerald. Consecuentemente, y debido a que los dos señalamientos de error formulados por la apelante no fueron cometidos, procede confirmar la Sentencia Parcial apelada.[20]

Luego de varios trámites procesales, el 1 de octubre de 2024, el señor López presentó ante el TPI su segunda *Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román y Solicitud de Determinaciones de Hechos* en la cual reafirmó exactamente los mismos argumentos de su *Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román*.[21] Luego, el 7 de octubre de 2024, el Fideicomiso presentó una *Moción en Torno a Segunda Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román*.[22] En síntesis, indicó que el apelante no tenía derecho a presentar una segunda oposición y pretender controvertir la *Sentencia* que emitió este Tribunal de Apelaciones el 15 de agosto de 2024.

Luego de examinar los planteamientos presentados por las partes, el 15 de noviembre de 2024, el TPI emitió la *Sentencia* apelada que se notificó el 18 de noviembre de 2024, en la cual declaró Ha Lugar la *Solicitud de Sentencia Sumaria sobre Segunda Demanda Enmendada*. Consecuentemente, desestimó la *Segunda Demanda Enmendada* contra el Fideicomiso. En primer lugar, el foro primario realizó las siguientes determinaciones de hechos:

1. El Fideicomiso González Román es el titular de la propiedad localizada en la Calle Colón #129, Aguada, Puerto Rico, donde Aguada Emerald opera su establecimiento comercial; así surge de la Escritura Pública Núm. 222 otorgada el 30 de noviembre de 2011 que se acompañó junto a la solicitud de

---

[20] Del expediente ante nuestra consideración no surge que las partes acudieran ante el Tribunal Supremo de Puerto Rico en *certiorari* para revisar dicha determinación.
[21] Id., págs. 257-333.
[22] Id., págs. 334-338.

sentencia sumaria del Fideicomiso González Román. La parte demandante no presentó documento alguno que controvierta este hecho que ya había sido adjudicado por el Tribunal.

2. El 27 de marzo de 2017, Aguada Emerald suscribió un contrato de arrendamiento sobre la propiedad localizada en la Calle Colón #129, Aguada, Puerto Rico, por un término de dos (2) años. La parte demandante no presentó documento alguno que controvierta este hecho que ya había sido adjudicado por el Tribunal.

3. Al 15 de marzo de 2019, fecha en que alegadamente ocurre el accidente, el contrato de arrendamiento estaba vigente y dicha propiedad estaba ocupada por Aguada Emerald, quien operaba en ella un dispensario de cannabis medicinal abierto a pacientes de cannabis medicinal. A esa fecha, Aguada Emerald era el operador del dispensario y tenía el control y mantenimiento de la misma, en virtud del referido contrato. Ninguno de los documentos presentados por la parte demandante controvierte este hecho que ya había sido adjudicado por el Tribunal.

4. Surge expresamente de la cláusula trece (13) del contrato que Aguada Emerald tomará las medidas necesarias conforme a las leyes y reglamentos vigentes y aplicables en cuanto a la seguridad del local. Ninguno de los documentos presentados por la parte demandante controvierte este hecho.

5. En virtud del contrato de arrendamiento suscrito el 23 de marzo de 2017, Aguada Emerald aceptó dicha propiedad como estaba, y realizó las obras necesarias para habilitarla para operar su negocio de cannabis medicinal; así surge del contrato de arrendamiento entre el Fideicomiso González Román y Aguada Emerald. Ninguno de los documentos presentados por la parte demandante controvierte este hecho que ya había sido adjudicado por el Tribunal.

6. En virtud del contrato de arrendamiento suscrito el 23 de marzo de 2017, Aguada Emerald se obligó a tomar todas las medidas necesarias conforme a las leyes y reglamentos vigentes y aplicables en cuanto a la seguridad del local que fueran necesarias para establecer y operar su negocio. Ninguno de los documentos presentados por la parte demandante controvierte este hecho.

7. El 15 de marzo de 2019, el demandante, Sr. Wilberto López Vera, se dirigió al dispensario operado por Aguada Emerald en el local propiedad del Fideicomiso González Román, para adquirir cannabis medicinal.

En vista de las determinaciones de hechos formuladas, el TPI coligió que el apelante no alegó ni demostró que padecía de una incapacidad cualificada al amparo de la Ley Federal ADA. Enfatizó, que las alegaciones del apelante nunca plantearon que la causa de su resbalón fue debido que la rampa no cumplía con los requisitos de la Ley ADA y, sufrió el accidente por tener una incapacidad. Así pues, entendió que el señor López carecía de legitimación activa, puesto que, para presentar una reclamación por la Ley ADA, era preciso que padeciera una incapacidad cualificada. Por tanto, indicó que el apelante no podía basar su oposición a la solicitud de sentencia sumaria en hechos dirigidos a establecer el incumplimiento de los requisitos de dicha ley federal. Asimismo, señaló que treinta y un (31) hechos propuestos por el apelante en su oposición, estaban sustentados por el informe del Arquitecto Eugenio Latour. Sin embargo, el TPI aclaró que dicho informe era prueba de referencia y, por ende, inadmisible. Respecto a los hechos restantes, el foro primario concluyó que eran impertinentes, toda vez que estaban dirigidos a demostrar el incumplimiento del Fideicomiso con la Ley ADA y el International Building Code 2000.

De otra parte, el TPI concluyó que la autenticidad, los términos y condiciones del contrato de arrendamiento no estaban en controversia. A su vez, explicó que, en la *Sentencia Parcial* que emitió el 4 de diciembre de 2023, resolvió que Aguada Emerald quedó obligada por disposición contractual a llevar a cabo las medidas que garantizaran la seguridad de sus clientes. Sostuvo que, dicha obligación incluía asegurarse que la rampa de acceso al local cumpliese con todos los requisitos de ley. Resalto que, a la fecha en que ocurrió el accidente, el contrato de arrendamiento estaba vigente y, Aguada Emerald tenía el control de la propiedad. Por tanto, coligió que Aguada Emerald tenía la responsabilidad de realizar las reparaciones necesarias o notificarle al Fideicomiso

sobre la necesidad de llevar a cabo dicha reparación. Ello, en virtud del contrato suscrito entre las partes. Resaltó que dicha determinación fue confirmada por este foro, por lo que constituía la ley del caso. Finalmente, concluyó que no surgía del expediente que Aguada Emerald notificara al Fideicomiso o al señor González con relación a la necesidad de reparaciones en la rampa, conforme lo exigía el Art. 1449 del Código Civil, 31 LPRA sec. 4056.

Aún inconforme, el 18 de diciembre de 2024, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Honorable Tribunal de Primera Instancia al desestimar la reclamación del apelante en contra del Fideicomiso al determinar que el contrato entre el Fideicomiso y Aguada Emerald Fields exime al primero de su obligación frente al demandante.**

> **Erró el Honorable Tribunal de Primera Instancia al determinar que el informe pericial del perito de la parte demandante es prueba de referencia y que el demandante tiene que probar que sufre de alguna incapacidad cualificada para que sean de aplicación a la propiedad los códigos de construcción aplicables en Puerto Rico, particularmente el International Building Code de 2000.**

Atendido el recurso, el 8 de enero de 2024, emitimos una *Resolución* concediéndole a la parte apelada hasta el 17 de enero de 2025 para presentar su alegato en oposición. Oportunamente, el 17 de enero de 2025, el Fideicomiso presentó su *Alegato del Fideicomiso González Román* y negó que el TPI cometiera los errores que el apelante le imputó.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en

aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.*, 188 DPR 307, 326 (2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores

utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra*,* pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales*, 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

**-B-**

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.[23] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda.* Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000). En tal sentido, **una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley.** (Énfasis suplido) Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. Consecuentemente, **los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno.** (Énfasis suplido) *Mercado, Quilichini v. U.C.P.R.,* 143 DPR 610, 627 (1997).

Consonó con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que **cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación.** (Énfasis suplido) Art. 1233 del Código Civil, 31

---

[23] Resaltamos que el cuerpo legal vigente en el momento que las partes contrataron era el Código Civil del 1930.

LPRA ant. sec. 3471. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009). Así pues, **en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes.** (Énfasis suplido) Íd., pág. 387.

**-C-**

La Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, establece el trámite procesal para enmendar las alegaciones. A esos efectos, la regla dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva. Si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal lo ordene de otro modo.

El Tribunal Supremo de Puerto Rico ha señalado que el requisito del consentimiento del tribunal para que una parte pueda enmendar sus alegaciones dependerá del momento en que se propone el cambio. *León Torres v. Rivera Lebrón*, 204 DPR 20, 35 (2020). Conforme dispone la Regla 13.1 de Procedimiento Civil, *supra*, no hará falta la aprobación judicial si la enmienda se presenta previo a que se notifique una alegación responsiva. Íd. En

todos los otros supuestos, será necesario obtener aprobación judicial para proceder a enmendar la alegación. Íd.

III.

En el presente caso, el señor López impugnó una *Sentencia Sumaria Parcial* que dictó el TPI el 15 de noviembre de 2024 y notificó el 18 de noviembre de 2024. Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por el Fideicomiso. En consecuencia, desestimó la *Segunda Demanda Enmendada* en contra del Fideicomiso. Específicamente en su primer señalamiento de error, el apelante planteó que el TPI erró al desestimar su reclamación en contra del Fideicomiso al determinar que el contrato entre este y Aguada eximía al Fideicomiso de su obligación frente al apelante. Por otra parte, en su segundo señalamiento de error, argumentó que el TPI erró al determinar que el informe pericial del Ingeniero Eugenio Latour era prueba de referencia y, que tenía que probar que sufría de alguna incapacidad cualificada para que fuera de aplicación a la propiedad los códigos de construcción aplicables en Puerto Rico, particularmente el International Building Code de 2000.

Cabe precisar que, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Así pues, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo*, supra. Al evaluar los escritos presentados por las partes resolvemos que, en esencia, ambas cumplieron con los referidos requisitos. Resuelto lo anterior, nos corresponde evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria. *Veamos.*

En su dictamen, el TPI realizó siete (7) determinaciones de hechos que no estaban en controversia las cuales adoptamos en su totalidad. Dicho lo anterior, no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria parcial. Por tal motivo, solo resta determinar quién era el responsable de que la rampa de acceso al local se encontrara en condiciones seguras el 15 de marzo de 2019, fecha en que ocurrió el alegado accidente.

Surge del expediente que el Fideicomiso era el titular de la propiedad donde ocurrió el accidente. Además, destacamos que Aguada Emerald otorgó un contrato de arrendamiento con el Fideicomiso, mediante el cual arrendó dicho local para operar un negocio de cannabis medicinal. Particularmente, en las cláusulas tres (3) y diez (10) en el contrato se pactó que Aguada Emerald aceptó dicha propiedad como estaba, se comprometió a mantener dicho local en buen estado y cuidarlo como buen padre de familia, comprometiéndose a reparar cualquier daño. A su vez, la cláusula catorce (14) de dicho contrato disponía que Aguada Emerald, como arrendataria, tomaría las medidas necesarias conforme a las leyes y reglamentos vigentes y aplicables en cuanto a la seguridad del local y el permiso de uso. Asimismo, aclaró que el contrato estaba sujeto a las leyes y reglamentos aplicables locales y federales. Añadimos que, este foro emitió una *Sentencia* el 15 de agosto de 2024, mediante la cual confirmó que, por virtud del contrato de arrendamiento, Aguada Emerald tenía el local en su control y mantenimiento y, era responsable de realizar reparaciones necesarias para operar el negocio. De dicha determinación, Aguada Emerald no acudió ante un foro de mayor jerarquía, para impugnar dicha determinación.

No podemos olvidar que aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado. Art. 1044 del Código Civil, *supra.* En tal

sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, *supra.* De igual forma, el Tribunal Supremo ha reiterado que cuando los términos de un contrato son claros y no dejan duda alguna sobre la intención de las partes, se utilizará el sentido literal de sus cláusulas. Artículo 1233 del Código Civil, *supra.* Así pues, en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes. *S.L.G. Francis-Acevedo v. SIMED*, supra, pág. 387.

Por ello, no tenemos duda de que Aguada Emerald contractualmente era el responsable del mantenimiento de dicha rampa y, consecuentemente, responde al apelante. En virtud de lo anterior, consideramos que el TPI no erró al aplicar el derecho a los hechos incontrovertidos y desestimar la *Segunda Demanda Enmendada* en contra del Fideicomiso. Por todo lo anterior, determinamos que el primer señalamiento de error no se cometió.

En cuanto al segundo señalamiento de error, el señor López arguye que el foro primario incidió, puesto que el informe pericial no era prueba de referencia y, no tenía que probar que tenía una incapacidad cualificada para que aplicasen a la propiedad los códigos de construcción de Puerto Rico y el International Building Code de 2000.

Nótese que, el apelante presentó una *Demanda* sobre daños y perjuicios en contra de Aguada Emerald. Posteriormente, el 30 de julio de 2021, presentó una *Demanda Enmendada* a los fines de incluir como demandados al Fideicomiso y al señor González. Luego, el 19 de mayo de 2022, el apelante presentó su *Segunda Demanda Enmendada* con el único fin de incluir a Universal Insurance Company como parte codemandada. Sin embargo, las alegaciones de la Demanda original no fueron alteradas.

Posteriormente, el 26 de diciembre de 2023, el Fideicomiso presentó una segunda *Solicitud de Sentencia Sumaria sobre Segunda Demanda Enmendada* en la cual solicitó se desestimara la segunda demanda enmendada, toda vez que no ostentaba el control y mantenimiento del local, debido al contrato de arrendamiento otorgado con Aguada Emerald. En desacuerdo, el 3 de enero de 2024, el apelante presentó su *Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román*. En lo pertinente, adujo que el Fideicomiso era responsable de los daños ya que tenía conocimiento de que dicha rampa no cumplía con la Ley ADA y el International Building Code. Particularmente, señaló que la rampa incumplía con los diseños de accesibilidad de dichas regulaciones, debido a que la rampa no tenía la inclinación correcta. De igual forma, esbozó que el pasamano y sus terminaciones incumplían con dichas leyes.

Nótese que, no es hasta la presentación de la *Oposición a Moción de Sentencia Sumaria del Fideicomiso González Román* que el apelante presentó, por primera vez, argumentos respecto a incumplimientos con la Ley ADA y el International Builging Code. Entiéndase, previo a dicha oposición, ni en la *Demanda* original, ni en las demandas enmendadas, el apelante presentó argumentos relacionados al incumplimiento del Fideicomiso con la Ley ADA y el International Building Code 2000.

Dicho lo anterior, entendemos que el apelante intentó enmendar las alegaciones de la *Demanda* mediante una solicitud de oposición a sentencia sumaria. Sin embargo, colegimos que una solicitud de oposición a sentencia sumaria no se puede considerar como una enmienda a las alegaciones. De otra parte, resaltamos que el señor López tuvo la oportunidad de enmendar sus alegaciones cuando presentó la primera y segunda demanda enmendada. No lo hizo. Cónsono con lo anterior, consideramos que la oposición a la

sentencia sumaria presentada por el Fideicomiso no es el mecanismo correcto para enmendar las alegaciones, conforme surge de la Regla 13.1 de Procedimiento Civil, *supra.*

Recordemos que, según el derecho que antecede, cualquier parte podrá enmendar sus alegaciones sin la autorización del Tribunal o la anuencia de la otra parte en cualquier momento antes de habérsele notificado una alegación responsiva. En el caso ante nos, las partes habían presentado sus respectivas contestaciones a demanda y reconvención. Por tanto, el apelante debió solicitar permiso al Tribunal para enmendar sus alegaciones e incluir las alegaciones con relación a violación de la Ley ADA y el International Building Code. En virtud de lo anterior, resolvemos que el segundo señalamiento de error no se cometió. Consecuentemente, procede confirmar el dictamen apelado.

## IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones